## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BILLY LORENZO JACKSON,

        Petitioner,

v.                                  CASE NO.  8:12-cv-1703-JSM-TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____/

## ORDER

Petitioner, an inmate in the Florida penal system proceeding *pro se*, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1).  The Court has considered the petition, Respondent's response, (Dkt. 10), and Petitioner's reply (Dkt. 15).  Upon review of the briefs and the record, the Court determines the petition must be denied.

## BACKGROUND

On the evening of December 30th, 2005, in Clearwater, Florida, John Hall drove home, passing by Pennsylvania Park around 7:30 P.M.  (Dkt. 12, Trial Tr. vol. 2, 198-202).  Pennsylvania Park served as a median, dividing Pennsylvania Avenue into a southbound and a northbound lane south of Plaza Street and north of Jones Street.  (Dkt. 12, Trial Tr. vol. 2, 198-202).  While slowly driving south at twenty miles per hour, Hall looked across the park and noticed two people on the northbound lane of Pennsylvania Avenue; one in the driver's

seat of a white car speaking to another outside the car's driver side door.  (Dkt. 12, Trial Tr. vol 2, 201-04).

    Hall's attention returned to the white car when he heard a gunshot from its direction. (Dkt. 12, Trial Tr. vol 2, 204).  He turned and saw the muzzle flash of a gun and then heard two more gunshots as well as the white car's engine start.  (Dkt. 12, Trial Tr. vol 2, 205).  He then saw the white car erratically travel north on Pennsylvania Avenue while the shooter, the person who had previously stood outside the white car, began to run across the park.  (Dkt. 12, Trial Tr. vol 2, 205-07).  The shooter came within eight to ten feet of Hall in a well-lit area, and Hall made eye-contact with him.  (Dkt. 12, Trial Tr. vol 2, 207-08).  Before the shooter disappeared behind a house across from the park, Hall noted he was an eighteen to thirty year-old, five feet eight inches to five feet nine inches tall black man, wearing a black T-shirt, dark pants, and dark boots with short hair and pockmarks on his face.  (Dkt. 12, Trial Tr. vol. 2, 208-13).  Hall also noted the shooter held a large silver handgun.  (Dkt. 12, Trial Tr. vol 2, 208).

    Prior to Petitioner's trial, using photo packs law enforcement provided him, Hall identified the shooter he saw that night as Petitioner Billy Lorenzo Jackson, stating he was eighty to eighty-five percent sure of his photograph identification.  (Dkt. 12, Trial Tr. vol 2, 215-18).  During Hall's testimony at Petitioner's trial, Hall also identified the Petitioner as the shooter.  (Dkt. 12, Trial Tr. vol 2, 218).

    With regard to the white car, law enforcement arrived in the area of the shooting around 7:36 P.M., approximately six minutes after the shooting, and found the car resting

against a tree where it had crashed a few blocks north of the shooting. (Dkt. 12, Trial Tr. vol 2., 260-62). The driver, identified as Thomas Gregory, had been shot and medical personnel pronounced him dead shortly after he was transported to a local hospital. (Dkt. 12, Trial Tr. vol. 2, 233, 268-69). A medical examiner later determined Gregory died from a gunshot wound to the chest - his heart pierced by a bullet traveling from his left to right as he sat in the car. (Dkt. 12, Trial Tr. vol. 2, 344, 354).

During their investigation of the accident crime scene, law enforcement discovered Gregory's cellular telephone in his crashed car. (Dkt. 12, Trial Tr. vol. 2, 289-92; vol. 3, 400). In the cellular telephone's call log, investigators found the last entry in the call log was the number 642-2338, which appeared as an outgoing call entered into the telephone around 7:26 P.M. on December 30, 2005, approximately four minutes before Gregory's shooting. (Dkt. 12, Trial Tr. vol. 2, 294). Investigators learned the 642-2338 number belonged to a pre-paid cellular telephone that was purchased and activated on the same day at 6:36 P.M., about an hour before the shooting. (Dkt. 12, Trial Tr. vol. 3, 393-94). In addition, the telephone was purchased from a local cellular telephone shop (the "Shop") less than a mile from the scene of the shooting. (Dkt. 12, Trial Tr. vol. 4, 475).

From the Shop's surveillance video, investigators identified Petitioner as the purchaser of that pre-paid telephone. (Dkt. 12, Trial Tr. vol. 3, 397-99). In the video, Petitioner's hair style, clothing, and shoes matched the description eyewitness Hall gave of the man he witnessed running away from the scene of the shooting with a gun in his hand. (Dkt. 12, Trial Tr. vol. 4, 448, 462). Later, in a meeting with investigators on April 17, 2006,

Petitioner identified himself in photographs the investigators had produced from the same surveillance video. (Dkt. 12, Trial Tr. vol. 4, 456). Petitioner told investigators he had left Clearwater hours before the shooting during the early afternoon of December 30, 2005, but the Shop video placed Petitioner in the area less than one hour before the shooting. (Dkt. 12, Trial Tr. vol. 4, 455, 476).

Further investigation of Petitioner's cellular telephone call log showed Petitioner made several telephone calls to his then girlfriend, Soyoura Herring, that night after the shooting. (Dkt. 12, Trial Tr. vol. 3, 409). Herring eventually alerted investigators to her conversations with Petitioner and testified at trial. (Dkt. 12, Trial Tr. vol 3, 368, 372). Herring testified that on the evening of the shooting, Petitioner told her that the "gun was hid, and it wasn't gonna be found." (Dkt. 12, Trial Tr. vol. 3, 369). Herring also testified that when she met Petitioner a few days after the shooting, Petitioner confessed that he had killed the man in Pennsylvania Park. (Dkt. 12, Trial Tr. vol. 3, 370)

On May 21, 2008, a jury convicted Petitioner of second degree murder. On July 18, 2008, Petitioner was sentenced to life in prison with a minimum mandatory life term as a prison releasee reoffender ("PRR") and a minimum mandatory term of twenty-five years in prison under Florida's 10-20-Life statute, Fla. Stat. § 775.087. (Dkt. 12, Respondent's Ex. 1). Petitioner appealed his conviction to the Second District Court of Appeal raising the following questions:

> 1.    Whether there was sufficient evidence presented to support the conviction of second degree murder.

2.     Whether the sentence imposed by the trial court was illegal.

On February 12, 2010, the state appellate court affirmed the judgment and sentence *per curiam* without written decision. *Jackson v. State*, 27 So. 3d 666 (Fla. 2d DCA 2010) [table]. The mandate issued March 09, 2010.

On March 4, 2010, the Petitioner filed a *pro se* motion for post-conviction relief in state court pursuant to Florida Rule of Criminal Procedure 3.850 raising six claims of ineffective assistance of counsel. Petitioner asserted his trial counsel ("Trial Counsel") was ineffective for failing to:

1.     object to the introduction of State's exhibit, a photo pack, on grounds of improper foundation;

2.     move to suppress the photo pack on grounds the photo pack was unduly suggestive;

3.     object to the in-court identification made by the State's witness, John Hall, on grounds of the identification was unreliable and not based on Hall's independent recollection;

4.     move for a mistrial due to the prejudicial in-court identification by Hall of the Petitioner;

5.     conduct a pretrial investigation on grounds that such investigation would have revealed exculpatory information; and

6.     investigate *Giglio* and *Brady* violations.

On June 15, 2010, the post-conviction court entered an order striking with leave to amend claims one, five, and six and holding in abeyance claims two, three, and four. Petitioner then filed an amended motion for post-conviction relief on July 14, 2010, asserting the same six claims. On March 21, 2011, the post-conviction court denied claims three, four,

five, and six and directed the State to respond to claims one and two.  On July 11, 2011, after

considering the State's response, the post-conviction court denied Petitioner's remaining

grounds for post-conviction relief.  Petitioner then filed a motion for rehearing which the

post-conviction court denied on August 24, 2011.  Petitioner appealed, and, on April 4, 2012,

the state appellate court affirmed *per curiam*.  *Jackson v. State*, 96 So. 3d 895 (Fla. 2d DCA

2012) [table].  The mandate issued on May 2, 2012.

On July 30, 2012, Petitioner timely filed this § 2254 petition for habeas relief raising

the same grounds raised in his post-conviction motion.

## STANDARD OF REVIEW

Since Petitioner's conviction was entered after the enactment of the Anti-Terrorism

and Effective Death Penalty Act of 1996 ("AEDPA"), his petition is subject to the provisions

thereof.  When a federal court is asked to review a criminal conviction from state court, 28

U.S.C. § 2254 places a heavy burden upon the petitioner.  Habeas relief may not be granted

with respect to a claim adjudicated on the merits in state court unless the adjudication of the

claim resulted in a decision that:

> (1)     was contrary to, or involved an unreasonable application of, clearly
> established federal law, as determined by the Supreme Court of the
> United States, or
>
> (2)     was based on an unreasonable determination of the facts in light of the
> evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Williams v. Taylor*, 529 U.S. 362 (2000).

In *Williams*, the Supreme Court held:

Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13.

Where no Supreme Court precedent is on point, or the point is ambiguous, it cannot be said that the state court's conclusion is contrary to clearly established federal law. *Mitchell v. Esparaza*, 540 U.S. 12, 17 (2003). "[A] state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite [Supreme Court] opinions. . . . [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Id.* at 16 (quoting *Early v. Packer*, 537 U.S. 3, 7-8 (2002)). Additionally, federal habeas relief is available under the "unreasonable application" standard only if the state court's application of clearly established federal law was "objectively unreasonable." *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001).

Regarding the second standard, a state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). This statutory presumption of correctness applies only to findings of fact made by the state court, not to mixed determinations of law and fact. *McBride v. Sharpe*, 25 F.3d 962, 971 (11th Cir. 1994).

Petitioner raises several grounds asserting ineffective assistance of counsel.  The law regarding ineffective assistance of counsel claims is well-settled and well-documented.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Id*. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id*.  *Strickland* requires a petitioner show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  *Id*.

In addition, a petitioner must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92.  To meet this burden, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In this case, the post-conviction court's denial of Petitioner's ineffective counsel claims is neither contrary to, nor an unreasonable application of, the *Strickland* standard.

## **DISCUSSION**

The Court will now address each of Petitioner's claims.

**Ground One:**   Trial Counsel was ineffective in failing to object to the introduction of State's Exhibit Number 3, a photo pack, due to improper foundation.

In support of ground one, Petitioner argues that eyewitness Hall, through whom the State introduced the photo pack into evidence, "clearly did not have any prior knowledge of what a photo pack consist[s] of nor where it was developed from[.]" (Dkt. 1, Petitioner Writ, 8).  Petitioner also seems to argue Trial Counsel should have objected because the photo pack was not properly authenticated.

The post-conviction court denied ground one, finding any objection to the photo pack would have been meritless and Petitioner was not prejudiced by the photo pack's introduction.  The court first addressed prejudice, stating:

> [A]n objection by trial counsel would have been meritless.  First, the prejudice, if any, the Defendant suffered would have been outweighed by the relevance of the photo pack. . . . [T]he witness had viewed the photo pack prior to trial. . . . [Defendant's] Counsel then used the witness' uncertainty in the identification during cross-examination of the witness to illustrate to the jury that the witness was only 80-85% certain, rather than 100% certain that the person in the photo was the Defendant.  As the Defendant used the witness' uncertainty regarding the photo pack to his advantage during trial he was not prejudiced by the photo pack being admitted into evidence.

(Dkt. 12, Ct. Order Ex. 7, 140, June 11, 2011) (citation omitted).  The court continued:

> [A]t trial, the witness did not rely on the photo pack to identify the Defendant. The witness saw the photo pack during the investigation of the crime and "narrowed down" his identification of the Defendant from four photo packs. Therefore, any objection put forth by counsel would have been denied as meritless.  Counsel cannot be ineffective for failing to make a meritless objection.

(Dkt. 12, Ct. Order Ex. 7, 140, June 11, 2011) (citation omitted).

The post-conviction court properly applied both Florida and federal law.  Concerning what constitutes a proper evidentiary foundation, the Florida Rule of Evidence states "a witness may not testify to a matter unless evidence is introduced which is sufficient to support a finding that the witness has personal knowledge of the matter.  Evidence to prove personal knowledge may be given by the witness's own testimony."  Fla. Stat. § 90.604 (2012).  The Florida Rule "recognizes that a witness who has actually perceived and observed the fact is the most reliable source of information.  The foundation requirement may be supplied by the witness."  Law Revision Council Note to Fla. Stat. § 90.604 (1976)).  The Florida Rule is also consistent with Federal Rule of Evidence 602, which states "[a] witness may not testify to a matter unless evidence is introduced sufficient to introduce a finding that

the witness has personal knowledge of the matter.  Evidence to prove personal knowledge

may, but need not, consist of the witness' own testimony."  Fed. R. Evid. 602.

At trial, the State elicited the following testimony from Hall, demonstrating his

personal knowledge of the photo pack:

> Q:    Mr. Hall, I'm gonna show you State's Exhibit Number 3 for
>       identification.  Do you recognize this?
> A:    I'm not sure what that - - if I recognize it.
> . . .
> A:    There were several groups of photographs.
> Q:    All right.  Did you look at this group of photographs?
> A:    Yes, and about three to four other groups.
> . . .
> Q:    All right.  But this is one of those groups of photos?
> A:    Uh-huh.

(Dkt. 12, Trial Tr. vol. 2, 215).  Following this exchange, the State introduced the photo pack

into evidence without objection from Trial Counsel.  Hall's personal knowledge of the photo

pack was an adequate foundation for its entry into evidence, and, thus, his testimony satisfied

§ 90.604 as well as Rule 602.

As such, any objection to the photo pack by Trial Counsel based on improper

foundation would have been meritless, and Trial Counsel was not ineffective for not making

meritless motions or objections.  *See United States v. Moore*, 921 F.2d 207, 210 (9th Cir.

1990) (failing to make a meritless motion does not constitute ineffective assistance by a

lawyer); *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) ("Failure to raise a meritless

argument does not constitute ineffective assistance.").  Perhaps Petitioner intended to argue

that Trial Counsel should have objected to the photo pack's introduction based on its

unnecessarily suggestive nature.  However, as will be discussed in detail below, the photo

pack was not unduly suggestive, and, thus, any objection based on that ground would also

have been meritless.

Based on the record, the post-conviction court's decision was a reasonable

application of both Florida and federal law.  Accordingly, ground one is denied.

**Ground Two:**        Trial Counsel was ineffective in failing to move for suppression of the
                       prejudicial photo pack.

In support of ground two, Petitioner argues Hall selected Petitioner's photograph

because it was the only photograph in the photo pack that had a dark background and the

only one that displayed a male with dark eyes and identifying marks on his face.  Due to

these alleged peculiarities, Petitioner argues that, in addition to being prejudicial, the

photo pack was unduly suggestive and created a substantial likelihood of irreparable

misidentification by Hall.

> Addressing ground two, the post-conviction court found the photo pack was
> not unduly suggestive to the witness or the jury because none of the physical
> traits or formatting characteristics in the Defendant's photo substantially
> distinguished his photo from the other photos in the pack and all the
> individuals shown had brown colored eyes. Furthermore, the witness indicated
> that he did not base his identification of the Defendant solely because of the
> marks on the Defendant's face.

(Dkt. 12, Trial Ct. Order Ex. 7, 141, June 11, 2011) (citation omitted).  The post-conviction

court properly applied both Florida and federal law based on a reasonable determination of

the facts from the evidence presented at Petitioner's trial.  As such, petitioner fails to meet

his burden.

Florida's law concerning when to exclude the result of a suggestive identification procedure is consistent with federal law. *See Grant v. State*, 390 So. 2d 341 (1980); *see also Manson v. Brathwaite*, 432 U.S. 98 (1977); *Simmons v. State*, 935 So. 2d 1100, 1118-19 (Fla. 2006). A suggestive out-of-court identification alone is not be enough to require that identification's exclusion. *Grant*, 390 So. 2d at 343. According to Florida's two-part *Grant* test, an identification will be excluded if law enforcement employed an "unnecessarily suggestive procedure in obtaining an out-of-court identification" and if, given all the circumstances, "the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification." *Id.* (citing *Manson*, 423 U.S. at 110). Regarding the second prong,

> [t]he factors to be considered in evaluating the likelihood of misidentification include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

*Grant*, 390 So. 2d at 343 (quoting *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)).

As for background color, "[t]he Florida Supreme Court has held that photographic arrays can consist of photographs that differ in background color, clothing, hair color, and pose, and that these differences alone do not make the arrays suggestive." *State v. Styles*, 962 So. 2d 1031, 1034 (Fla. 3d DCA 2007) (citing *Lewis v. State*, 572 So. 2d 908 (Fla. 1991) (holding a different background in a photograph is not overly suggestive)). The *Styles* court also cited *Green v. State*, 641 So. 2d 391, 394 (Fla. 1994) (*post-conviction relief affirmed on other grounds* in *Green v. State*, 975 So. 2d 1090 (Fla. 2008)). *Styles*, 962 So. 2d at 1034.

In *Green*, the Florida Supreme Court directly addressed whether differences in background color between photographs in a photo pack are unduly suggestive, stating:

> We find that the police did not use an unnecessarily suggestive procedure to obtain [an] out-of-court identification of [the Defendant], so we need not consider the second part of the *Grant* test.  The police showed [the witness] an array of six photographs, all of which depicted men with similar characteristics.  Although police indicated the suspect was in the photo lineup and [the Defendant's] photograph was darker than the others, there is no indication that officers directed [the witness's] attention to any particular photograph.  Thus, the trial court did not err in refusing to suppress the photo identification.

*Green*, 975 So. 2d at 394-95 (citation omitted).

In this case, Petitioner's photograph did have a dark background in contrast to the other photographs in the photo pack, but the record does not support Petitioner's allegation that his photograph was the only one of a man with identifying facial marks.  At trial, Petitioner's counsel asked Hall, "[W]ould you agree with me that the only person of this photo pack that has any pockmark or mark on his face is [the Petitioner]?" to which Hall replied, "No, not really."  (Dkt. 12, Trial Tr. vol. 2, 221).  Trial counsel then asked Hall, "Do any other people in this photo pack have any distinctive marks on their cheeks like [Petitioner]?" to which Hall replied, "Yes."  (Dkt. 12, Trial Tr. vol.2, 221).  In addition, the record does not support Petitioner's contention that his photograph was the only one with "dark eyes" as the record reflects that the photo pack had six pictures of black males who all had dark colored eyes.  Ultimately, the record shows background color was the only salient difference between Petitioner's photograph and the photographs in the photo pack.

As in *Green*, the difference in background color does not make the photo pack unnecessarily suggestive. Thus, there is no need to address whether the photo pack gave rise to a substantial likelihood of irreparable misidentification. There is no evidence that the dark background of Petitioner's picture influenced Hall's selection of Petitioner's photograph. Indeed, Hall identified Petitioner's picture based on other factors, including Petitioner's haircut, eyes, and facial discoloration, which all matched Hall's recollection of the shooter.

Any attempt by Trial Counsel to suppress the photo pack as unduly suggestive would have been meritless, and, as discussed above, the failure to make a meritless motion is not ineffective assistance of counsel. *Moore*, 921 F.2d at 210; *Boag*, 769 F.2d at 1344. The post-conviction court reasonably applied Florida and federal law based on a reasonable determination of the facts in light of the evidence presented at Petitioner's trial. Accordingly, ground two is denied.

**Ground Three:**     Trial Counsel was ineffective in failing to object to Hall's in-court identification.

**Ground Four:**     Trial Counsel was ineffective in failing to move for a mistrial based on Hall's prejudicial in-court identification.

In support of grounds three and four, petitioner argues Hall's in-court identification of Petitioner was unreliable as it was not based on Hall's independent recollection of the shooting. Rather, Petitioner argues Hall's in-court identification was influenced by the photo pack since the State introduced the photo pack and questioned Hall in great detail regarding Petitioner's photograph prior to eliciting Hall's in-court identification. In further support of

ground four, Petitioner asserts the prejudice to him from the improperly conducted in-court

identification required Trial Counsel to move for a mistrial.

Addressing ground three, the post-conviction court stated:

The Defendant's claim is directly refuted by the record.  Prior to trial, during
his deposition, Mr. Hall provided information regarding the Defendant, such
as his manner of dress, hair styling, and facial appearance.  Furthermore, Mr.
Hall stated that he "was able to point at someone [in the photo pack] and say
that looked like the gentleman I saw."  The record indicates that the Defendant
was not first identified by Mr. Hall at trial, nor was Mr. Hall first exposed to
the photo pack at trial.  Counsel was not ineffective for not objecting or
seeking a new trial or seeking to have the charges dismissed as any of those
motions would have been denied and, therefore, the Defendant would not have
been prejudiced.

(Dkt. 12, Ct. Order Ex. 7, 44, Mar. 21, 2011) (citations omitted) (citing *Ramos v. State*, 559

So. 2d 705 (Fla. 4th DCA 1990)).

In addressing ground four, the post-conviction court stated:

Defendant claims that counsel was ineffective for failing to move for a mistrial
due to a prejudicial in-court identification of the Defendant.  Specifically, the
Defendant asserts that counsel was required to move for a mistrial whenever
an error occurs during a trial that cannot be cured by some remedial action.  He
claims that counsel stood idly by as the State presented the witness, Mr. Hall,
a photo pack containing the Defendant's photograph.  He alleges that the State
discussed the Defendant's photo pack in great length before asking Mr. Hall
to identify a person who looked similar to the person he saw commit the crime.
The Defendant claims that had counsel moved for a mistrial, the outcome of
the proceedings would have been different.  This claim is nearly identical to
the claim presented in ground III.  For reasons more fully explained in ground
III, this claim is denied.

(Dkt. 12, Ct. Order Ex. 7, 44, Mar. 21, 2011).

Here, the record supports the post-conviction court's findings refuting Petitioner's

allegations that the photo pack's introduction influenced Hall's in-court identification, that

the in-court identification was unreliable, and that the in-court identification unfairly prejudiced Petitioner.  First, the record shows the in-court identification came as a result of Hall identifying Petitioner as the shooter he witnessed on the evening of December 30, 2005, not as a result of Hall identifying Petitioner as the man he saw in the photo pack. Specifically, the record shows the State asked Hall whether he saw anyone in the courtroom who was "similar to *the person you saw that night* with the gun who shot into that small white vehicle" and that Hall responded by identifying Petitioner and stating the person Hall had seen that night, the shooter, was Petitioner.  (Dkt. 12, Trial Tr. vol. 2, 218) (emphasis added).

Second, the record is clear that Hall had previously independently identified Petitioner out-of-court while Hall browsed through photo packs provided by law enforcement.  The record shows Hall stated at his deposition[1] that by examining various photo packs he was "able to point at someone [in the photo pack] and say that looked like the gentleman that [he] saw." (Dkt. 12, Hall Dep. Ex. 7, 8-9, Nov. 9, 2007).  The record also reflects that, prior to the State's introduction of the photo pack and before his in-court identification of Petitioner, Hall gave a description of Petitioner based on what he witnessed on December 30, 2005, and that in-court description matched the description Hall had previously given at his pre-trial deposition, where no photo pack was present.  Hence, the record supports the post-conviction court's finding that Hall based his in-court identification on his own recollection.

---

[1] Hall's pre-trial deposition was part of the record before the post-conviction court, and the post-conviction court relied on the deposition in making its findings.

Ultimately, the post-conviction court's denial of grounds three and four stemmed from its determination that the in-court identification was reliable as it found the identification was based on Hall's personal knowledge as an eyewitness.   Any attempt to object to the identification as unreliable or move for a mistrial would have been meritless.   For the same reason, Petitioner has failed to show unfair prejudice.   The post-conviction court's decision was a reasonable application of both Florida and federal law.   Accordingly, grounds three and four are denied.

**Ground Five:**         Trial Counsel was ineffective in failing to conduct a pretrial investigation.

In support of ground five, Petitioner argues that had Trial Counsel conducted a reasonable pre-trial investigation, Trial Counsel could have presented a more robust defense pinning the shooting on Emmanuel McCray, who had been in the Shop at the same time as Petitioner on December 30, 2005, and who, at the time of Petitioner's trial, had an outstanding warrant for his arrest for an unrelated murder.   Petitioner states:

> It was defense counsel['s] and Petitioner['s] defense that Mr. McCray was the one who shot the victim in this case and not the Petitioner. . . . [H]ad counsel conducted a pre-trial investigation, counsel could have presented the court with evidence that Petitioner is actually innocent of the shooting.   It is still the Petitioner's stand point that the weapon used in this case, is the same weapon used in the case concerning Mr. . . . McCray.

> Had it not been for counsel['s] failure to conduct a pre-trial investigation, counsel could have called a [Florida Department of Law Enforcement] Firearm expert to testify that the firearm used in Petitioner's case is the same in Mr. McCray's case, which would have demonstrated that Petitioner was not the individual who committed the murder.

(Dkt. 1, Petitioner Writ, 26-27).

The post-conviction court addressed this ground in its final order, stating:

> The Defendant's claim is directly refuted by the record.  In his motion, the Defendant acknowledges that counsel was able to proffer both Detective Spelman and Sergeant Dalton.  During the proffers, both witnesses were questioned as to their knowledge of Mr. McCray and his possible involvement in the above-styled case.  During Sergeant Dalton's proffer, he testified that he had no knowledge concerning a warrant for Mr. McCray.  Even if the Defendant's counsel had investigated Mr. McCray's alleged involvement prior to trial, counsel would have still been unable to elicit any relevant testimony concerning Mr. McCray because Sergeant Dalton had no knowledge of such information.  Additionally, at the end of Detective Spelman's proffer, the Court determined that the testimony was not relevant and would not be admitted.  The Defendant's counsel did, in fact, attempt to admit evidence concerning Mr. McCray.  Furthermore, the reasons for excluding the testimony could not have been overcome even if counsel had conducted a pretrial investigation.  Therefore, this claim is denied.

(Dkt. 7, Trial Ct. Order Ex. 7, 45, Mar. 21, 2011).  Given the record, the post-conviction court's decision was a reasonable application of federal law.  There are "[n]o absolute rules [that] dictate what is reasonable performance for lawyers."  *Crawford v. Head*, 311 F.3d 1288, 1297 (11th Cir. 2002) (quoting *Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2001)).  Counsel does not  have an "absolute duty to investigate particular facts or a certain line of defense, although a complete failure to investigate may constitute deficient performance of counsel in certain circumstances."  *Crawford*, 311 F.3d at 1297 (citing *Chandler*, 218 F.3d at 1317).

Petitioner's only specific ground for claiming Trial Counsel failed to conduct a pre-trial investigation is Trial Counsel's failure to call a firearm expert to testify the same gun was used in another murder.  Petitioner also implies that, as a result of a pre-trial investigation, Trial Counsel would have known prior to Petitioner's trial that McCray had

an outstanding arrest warrant, which Petitioner believes would have helped prove his innocence.  With regard to calling a firearm expert to testify, Petitioner claims a firearm expert would have testified the gun used to shoot Gregory was the same gun McCray used in an unrelated murder.  Petitioner claims such testimony would have exonerated him and changed the trial's outcome.  The record does not support that claim, which fails on multiple levels.

First, Petitioner is merely speculating that the same gun was used in another murder. He offers no supporting evidence.  Second, Petitioner presented no evidence McCray even committed a murder, let alone used a gun to do so, aside from mentioning McCray had an outstanding arrest warrant for an unrelated murder.  Nonetheless, even if McCray had indeed committed a gun murder, Petitioner presented no evidence as to when the murder took place, where it took place, and with what weapon it took place.

Moreover, exoneration of the Petitioner is not the only conclusion one can draw from Petitioner's assertion that the murder weapon in McCray's case is the same weapon used to murder Gregory.  By neglecting to present any evidence in support of his claims, Petitioner's claims remain conclusory conjectures insufficient to prove ineffective assistance of counsel under *Strickland*.  *See Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient." (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991))); *see also Kennedy v. State*, 547 So. 2d 912, 913 (Fla. 1989) ("A defendant may not simply file a motion for postconviction relief

containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing.").

Regarding McCray's outstanding arrest warrant, the record shows Trial Counsel did attempt to use it during trial as part of a defense strategy to implicate McCray in Gregory's shooting rather than Petitioner. Trial Counsel questioned two law enforcement witnesses, Sergeant Dalton and Detective Spelman, regarding McCray's outstanding arrest warrant. He asked Sergeant Dalton if he was aware of McCray's outstanding arrest warrant, but Dalton stated he was not aware of that fact until Trial Counsel had mentioned it. When asked the same question, Detective Spelman indicated she was aware of McCray's arrest warrant, but she also stated she had no knowledge of the McCray case and that it was not related to Petitioner's case. The State objected to Trial Counsel's attempt to introduce evidence of McCray's warrant, arguing it was irrelevant, and Trial Counsel argued in response:

> Judge, the witness [Detective Spelman] has been asked about similarities and dissimilarities with the defendant. Some of the clothing that Mr. McCray was wearing was consistent or similar to what Mr. Jackson was wearing. The State in their direct examination has made an effort to ask questions trying to show dissimilarities, such as the hairstyle and short pants versus long pants. I submit, Judge, that anyone that was at that store at that - at that time period that - when that cell phone was purchased is a potential suspect. And the fact that the - Mr. McCray is - is at-large with a murder warrant on him, I think is relevant. I think it's something that the jury can determine what weight to give it. I don't think it's necessary to show that that murder charge is - is - has any connection to this murder charge or that the facts are similar or anything of that nature. If - if - if it was, it would - it would - it would be - the jury could give it greater weight, but I would submit that it's relevant. It's simply a question as to what weight the jury might want to give it.

(Dkt. 12, Trial Tr. vol. 4, 487-88).

Ultimately, the post-conviction court found McCray's arrest warrant in an unrelated case inadmissible because it was irrelevant and immaterial. Any additional pre-trial investigation by Trial Counsel would not have would have made McCray's warrant relevant. Thus, the record shows Trial Counsel's performance was not deficient, and Petitioner's claim fails the first part of the *Strickland* test. For the same reasoning, there was no prejudice to Petitioner due to Trial Counsel's lack of knowledge before trial of McCray's arrest warrant since evidence of that warrant would not have been admitted at trial even if Trial Counsel had knowledge of it before trial.

In addition, Petitioner suffered no prejudice from Trial Counsel's failure to call a firearm expert to testify. As stated above, exoneration is not the only inference that can be taken from Petitioner's assertion that the gun used to murder Gregory was the murder weapon in the McCray case. For example, given that McCray and Petitioner were in the Shop at the same time shortly before Gregory's shooting, a plausible inference is that Petitioner and McCray were acquaintances and that McCray lent Petitioner the gun to shoot Gregory. That they were acquaintances is also supported by Petitioner's personal knowledge of McCray's outstanding arrest warrant and by Petitioner's confidence that the gun used to murder Gregory was also the murder weapon in the McCray case. As such, Petitioner fails to meet the second part of the *Strickland* test. Accordingly, ground five is denied.

**Ground Six:** Trial Counsel was ineffective in failing to investigate a possible *Giglio* violation and a possible *Brady* violation.

In support of this ground, Petitioner claims there was a *Brady* violation since the State withheld knowledge from Petitioner of the existence of a plea agreement between the State and Herring, which agreement required Herring to testify against Petitioner at trial. Regarding a *Giglio* violation, Petitioner claims the State knew or should have known that Herring's testimony was based on information gleaned from news media regarding Gregory's shooting. Although he does not explicitly state it, Petitioner implies Herring gave false testimony.

The post-conviction court ultimately found that:

> [T]he Defendant makes conclusory allegations and fails to establish the three elements detailed above for a *Brady* claim and also fails to establish the three elements needed for a *Giglio* violation. Since the Defendant has had one opportunity to amend his facially insufficient claim, as detailed in this Court's June 15, 2010 order, but has failed to cure the pleading defect, this claim is now denied

(Dkt. 12, Trial Ct. Order Ex. 7, 46, Mar. 21, 2011).

The post-conviction court's decision was a reasonable application of federal law. In order to prove a *Brady* violation, Petitioner must show the following: "'[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued.' Under the prejudice prong, the [Petitioner] must show that the suppressed evidence is material." *Reed v. State*, 875 So. 2d 415, 430 (Fla. 2004) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). As the post-conviction noted, "To establish prejudice or materiality under *Brady*, a [petitioner] must

demonstrate a reasonable probability that in light of the entire record the jury verdict would have been different had the suppressed information been used at trial.  The Court in its discretion is to determine if the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."  (Dkt. 12, Ct. Order Ex. 7, 46, Mar. 21, 2011) (citing *Ponticelli v. State*, 941 So. 2d 1073, 1084-85 (Fla. 2006)).  In order to prove a *Giglio* violation, a petitioner must establish the following elements: "[1] the testimony given was false; [2] the prosecutor knew the testimony was false; and [3] the statement was material."  (Dkt. 12, Ct. Order Ex. 7, 46, Mar. 21, 2011) (citing *Ponticelli*, 941 So. 2d at 1088).

Petitioner bases his argument on his assumption that Herring had a plea agreement with the state, but there is no evidence of this in the record.  Even if there was a plea agreement, its existence and any negative impact it may have had on Herring's credibility would not have undermined all the other evidence, including the eye-witness testimony by Hall, that Petitioner was Gregory's shooter.  As such, Petitioner fails to show the jury verdict would have been different had the existence of the alleged plea agreement been presented at trial, and, therefore, Petitioner fails to establish a *Brady* violation.  Petitioner also fails to establish a *Giglio* violation.  Petitioner's claims are conclusory, and he has provided no evidence Herring's testimony was false or that the prosecutor knew it was false. Accordingly, ground six is denied.

## CONCLUSION

Having addressed each ground and having determined that each claim should be denied, the Petitioner for habeas relief will be denied.  Additionally, since Petitioner's claims can be refuted from the record, no evidentiary hearing is necessary.

It is therefore ORDERED AND ADJUDGED that:

1.     The petition for writ of habeas corpus (Dkt. 1) is DENIED.

2.     The Clerk is directed to enter judgment in favor of Respondent and against the Petitioner, terminate any pending motions, and close this file.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  *Id.*  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*,

463 U.S. 880, 893 n.4 (1983)).  Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE** and **ORDERED** in Tampa, Florida on March 8, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>**Copies Furnished To**</u>:
Counsel/Parties of Record

F:\Docs\2012\12-cv-1703 Jackson Order.wpd